UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EVE OLIVAREZ and REM TO,

    Defendants.
_____/

File No. 1:13-cr-89

HON. ROBERT HOLMES BELL

**OPINION**

On May 9, 2013, a grand jury indicted Defendants on one count of conspiracy to distribute 50 grams or more of methamphetamine, contrary to 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1)(A)(viii). The grand jury also indicted Defendant Olivarez on one count of use of the mails to commit a felony, contrary to 21 U.S.C. § 843(b), 21 U.S.C. § 843(d)(1), and 18 U.S.C. § 2; and one count of possession with intent to distribute 5 grams or more of methamphetamine, contrary to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(viii) (Dkt. No. 1). Defendants pleaded not guilty to all counts on June 19, 2013, before Magistrate Judge Hugh Brenneman (Dkt. Nos. 21, 22). On September 20, 2013, Defendants filed a joint motion to quash the search warrant for 8683 Swallow Street, Zeeland, Michigan (the "Residence"), and exclude evidence seized at the Residence during the search (Dkt. No. 39). For the reasons that follow the motion is denied.

**I. BACKGROUND**

According to Defendants, the contested search warrant (attached to Defendants' motion as Exhibit A, Dkt. No. 39-2) lacks adequate probable cause to support the search of a residence (Defs.'

Br., Dkt. No. 39-1 at 3). The affidavit states that on December 20, 2011, detectives located crystal methamphetamine in the residence of Khamnmany Thong Phouangphet (Search Warrant, Dkt. No. 39-2 at 4). Phouangphet stated that he received his methamphetamine in packages delivered by the United States Postal Service (USPS) from a subject in California (*id.*). Police observed USPS packaging in Phouangphet's residence with a return address in California (*id.*). Phouangphet indicated that Defendant Olivarez also received such packages from California, and that he had purchased methamphetamine from Defendant Olivarez before ordering it from California himself (*id.*)

The detectives contacted the Zeeland branch of the USPS and described the packages and explained they were coming from California (*id.*). The postal carrier stated that Defendant Olivarez had been receiving at the Residence approximately two packages per week from California that matched the description the detectives gave (*id.*).

On January 18, 2012, the Zeeland Post Office contacted detectives to advise that another package matching the description and originating in California was to be delivered to Defendant Olivarez at the Residence (*id.*). The Postal Inspector obtained a federal search warrant to open the package, and found that it contained one ounce of methamphetamine and one-and-one-quarter ounces of marijuana (*id.*).

A confidential informant stated that he or she had purchased methamphetamine from Defendant Olivarez in the past (*id.*). The informant further identified Defendant Olivarez as the "Legend" because she had sold drugs so long without being caught (*id.*). The swearing officer averred that he believed a search of the Residence would result in evidence of crime (*id.*).

According to Defendants, after the contested search warrant issued, law enforcement "placed

a transmitter in the package to be able to detect when it was opened" (Defs.' Br., Dkt. No. 39-1 at 2). A person named Darovny Southavilai signed for the package when it was delivered to the Residence (*id.*). When the transmitter went off, law enforcement entered the residence, telling Southavilai they had a search warrant (*id.*). Defendant Olivarez was in a bedroom; the package was found in the bedroom closet (*id.*). The contraband was not found in the package, but rather in a "hoodie" found in the closet (*id.* at 3).

## II. LEGAL STANDARDS

The Fourth Amendment states that "no warrants shall issue but upon probable cause, supported by oath or affirmation . . ." U.S. Const. Amend. IV. In order to demonstrate probable cause sufficient to support a search warrant, an affidavit must contain facts that indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir.2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir.1990)). The analysis must take into account the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). However, in considering the evidence, the Court is limited to the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971)).

The exclusionary rule provides that evidence obtained in violation of the constitution is not admissible in court. *See Weeks v. United States*, 232 U.S. 383 (1914); *Mapp v. Ohio*, 367 U.S. 643 (1961). However, "the purpose of the exclusionary rule, which is to deter police misconduct, will not be served by excluding evidence seized by an officer acting in good faith." *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (citing *United States v. Leon*, 468 U.S. 897, 916 (1984)). Therefore, even if a search warrant is later held to be constitutionally deficient, evidence seized as

a result of the search will not be suppressed if the officers executing the warrant relied in good-faith on the magistrate's determination that probable cause existed. *Frazier*, 423 F.3d at 533 (citing *Leon*, 468 U.S. at 905). "In making this determination, all of the circumstances . . . may be considered." *Leon*, 468 U.S. at 922-23 n. 23.

> The exception, as it were, to the exception is when:
>
> 1) the supporting affidavit contained knowing or reckless falsity;
> 2) the issuing magistrate wholly abandoned his or her judicial role;
> 3) the affidavit is "so lacking in probable cause as to render official belief in its existence entirely unreasonable;" or
> 4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

*Frazier*, 423 F.3d at 533 (quoting *Leon*, 468 U.S. at 923). The Sixth Circuit held that the *Leon* good-faith exception applies in cases where "the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *United States v. Carpenter*, 360 F.3d 591, 596 (2004).

### III. ANALYSIS

Although Defendants' arguments span five pages of 12-point Arial typeface text, the gravamen of their argument is that the affidavit supporting the search warrant does not "provide a proper nexus of illegal activity to the [R]esidence itself" (Defs.' Br., Dkt. No. 39-1 at 5).

Defendants argue that essential facts were omitted from the affidavit. First, with regard to the package addressed to Defendant Olivarez at the Residence "there is nothing in the affidavit that the police intended to mail the package, put a transmitter in the package, and then have a contraband delivery to the residence [sic]" (*id.*). They also argue that the named informant, Khamnmany

4

Phouangphet, never stated that the Residence was the place the packages were delivered, nor that Defendant Olivarez sold drugs from the Residence, nor that he ever personally saw drugs at the Residence (*id.* at 6). They further argue that the confidential informant provides no nexus to the Residence (*id.*). Finally, they argue that "there were no undercover buys from the [R]esidence nor any allegations that cocaine dealing or any transactions had occurred there. No one told police they had seen any illegal drugs at the [R]esidence, nor sales of illegal drugs" (*id.* at 7).

Defendants' arguments are not persuasive. The following facts, as described *supra*, are contained in the affidavit: (1) a named informant stated he received packages of contraband from California; (2) law enforcement examined one such package; (3) the informant stated that Defendant Olivarez receives similar packages containing contraband from California; (4) law enforcement contacted the USPS; (5) the USPS stated that Defendant Olivarez had been receiving packages at the Residence from California that matched the description of contraband-containing packages given by law enforcement, at a frequency of twice per week; (6) the USPS later contacted law enforcement to advise that another package—fitting the earlier description, coming from California, and addressed to the Residence—had arrived; and (7) a valid search warrant was executed, revealing contraband in the package (Search Warrant, Ex. A, Dkt. No. 39-2 at 4). Absent from the affidavit, as Defendants note, is an explicit statement that this particular package was then allowed to be delivered. Such, however, weighs little in this Court's determination that the affidavit provides probable cause for a search warrant to issue.

An affidavit supporting a warrant must contain facts that demonstrate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *Jenkins*, 396 F.3d at 760. The facts recited above—which draw a line from a source of illegal drugs in California straight

5

to the Residence—demonstrate beyond a "fair probability" that evidence of a crime would be located at the Residence. The Court holds, therefore, that the search warrant was constitutionally sufficient, and the evidence seized at the Residence is admissible.

Even if the search warrant was not based on probable cause, the law enforcement officials were justified in relying in good faith on the magistrate's determination that probable cause existed. In *Carpenter* the Sixth Circuit held that the affidavit in question was not "completely devoid of any nexus between the residence and the marijuana that the police observed." 360 F.3d at 595-96. During aerial surveillance, police had observed men carrying bundles from a marijuana field down a worn track to a nearby house. *Id.* at 592. The affidavit supporting the search warrant executed to search the house only stated that the house was near the marijuana field and that a road connected the two. *Id.* at 596. Nonetheless, the Court held that although the facts "were too vague to provide a substantial basis for the determination of probable cause" reasonable officers could have believed the affidavit was sufficient to support the warrant. *Id.*

Here, the considering "all of the circumstances" the officers could have relied on the fact that they knew contraband intended for Defendant Olivarez was actually delivered to the Residence and opened to believe that the search warrant was valid. Defendants anticipate the good-faith argument, and respond that "the good faith exception does not apply in this case because the Affidavit was devoid of information that supports probable cause and/or the warrant is facially deficient"(Defs.' Br., Dkt. No. 39-1 at 9). Defendants provide no further argument to support this conclusion. This Court, therefore, need not address the contention that the warrant is facially deficient. And as explained *supra*, the affidavit provides, at the very least, a minimally sufficient nexus between the Residence and the illegal activity. *See Carpenter*, 360 F.3d at 596. Therefore, the Court holds

6

alternatively that if the affidavit does not support a determination of probable cause, the good-faith exception to the exclusionary rule renders the evidence seized at the Residence admissible

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the affidavit supporting the search warrant demonstrated probable cause that evidence of a crime would be located at 8683 Swallow Street, Zeeland, Michigan. Because the Court is denying the motion to suppress, it need not address Defendant To's argument that she has standing to challenge the warrant. Accordingly, Defendants' Motion to Suppress will be denied. The Court will issue an Order consistent with this Opinion.


Dated: October 9, 2013 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE